## JACOB SCHIEK ET AL.

### V.

## TRUSTEES OF SCHOOLS OF TOWNSHIP, ETC.

1.  OFFICIAL BOND—SURETIES SIGNING—BREACH OF CONDITION.—
Where sureties sign an official bond which the statute requires the principal
to execute, and permit their principal to take it under the agreement and
condition that he shall sign it before delivery, and they give no consent
that it shall be delivered without his signature, the sureties would not be
bound by such bond if it were delivered by the principal without signing,
and accepted by the obligees in violation of such condition.

2.  BURDEN OF PROOF.—Where an official bond, signed by sureties, but
not signed by the principal, who is required by the statute to execute it, is
accepted by the obligees, the burden is upon the obligees to show that the
sureties expressly consented to its delivery without its being executed by
the principal.

3.  IMPLIED AUTHORITY.—It can not be said, in such case, that the pos-
session of the obligation by the principal is an implied authority to deliver
it in such condition.

APPEAL from the Circuit Court of Will county; the Hon.
GEORGE W. STIPP, Judge, presiding.  Opinion filed February
5, 1885.

Messrs. HILL & DIBELL and Messrs. HALEY & O'DONNELL,
for appellants; that where the name of an intended co-obligor
appears on the face of a bond, who has not executed it, the
bond is incomplete and not a binding instrument, cited Cur-
tis v. Moss, 2 Rob. 367; Villers v. Brognier (La.), 3 Mart. O.
S. 349; Wells v. Dill, 1 Mart. (La.), N. S. 592; Fletcher v.
Light, 4 Bush (Ky.), 303; Smith v. Moberly, 10 B. Mon. 266;
Hall v. Smith, 14 Bush, 604; Sharp v. U. S., 4 Watts (Pa.),
21; State Bk. v. Evans, 3 J. S. Green (15 N. J.), 155; Deor-
dorff v. Foreman, 24 Ind. 481; Webb v. Baird, 27 Ind. 368;
Dair v. U. S., 16 Wall. 5; Evans v. Bainbridge, 34 E. L. 397;
Wood v. Churn, 18 Gratt. (Va.), 801; Nash v. Fugate, 24
Gratt. 202; State v. Potter, 16 Am. Law Reg. N. S. 170;
Fletcher v. Baxter, 11 Vt. 447; Hall v. Parker, 37 Mich. 590;
Johnston v. Kimball Township, 39 Mich. 187; City of Chi-

cago v. Gage, 95 Ill. 618–620; Cawley v. People, 95 Ill. 258; Allen v. Marney, 65 Ind. 398; Rhode v. McLean, 101 Ill. 472.

As to non-execution by the principal: 2 Pothier on Obligations, Ch. 6, § 1, p. 365; 1 Theobald on Principal and Surety, 1; Curtis v. Moss, 2 Rob. (La.), 367; Ferry v. Burchard, 21 Conn. 602; Martin v. Thomas, 24 How. 315; Bean v. Parker, 17 Mass. 603; Wood v. Washburn, 2 Pick. 24; Russell v. Anable, 109 Mass. 72; Hall v. Parker, 37 Mich. 590; Bunn v. Jelmore, 10 Cent. L. J. 137; Knight v. Hurlbut, 74 Ill. 133.

Mr. JAMES FRAKE and Mr. B. W. ELLIS, for appellees; that where a bond is required and the form is prescribed by statute, and the bond is voluntary, if the exact statutory form is not followed, the bond will still be obligatory, cited Pritchett v. People, 1 Gilm. 525; Fournier v. Faggott, 3 Scam. 347; Ballingall v. Carpenter, 4 Scam. 306.

And if not good as a statutory bond it will still be binding as a common law obligation: Coons v. People, 76 Ill. 383; Richardson v. People, 85 Ill. 495; Board of Education v. Fonda, 77 N. Y. R. 350.

A bond is none the less obligatory upon those who sign it because others whose names are written in the body of the bond do not sign it: Burger v. Belsley, 45 Ill. 72; Keys v. Keen, 17 Penn. 330; Haskins v. Lumbard, 16 Me. 142; Scott v. Whipple, 5 Greenleaf, 336; Cutter v. Whitmore, 10 Mass. 444.

The surety is none the less bound, because the one whose name was in the body of the bond, but who did not sign, would have been the principal in the bond: Loew v. Stocker, 68 Penn. 326; State of Ohio v. Bowman, 10 Ohio, 445; Miller v. Turnis, 10 Upper Canada, 423; Williams et al. v. Marshall, 42 Barb. 524; Herrick v. Johnson, 11 Metcalf, 34; Adams v. Bean, 12 Mass. 139; Parker v. Bradley, 2 Hill, 584; Wild Cat Bank v. Ball, 45 Ind. 213; Comyn's Digest, title Bail, 92.

PILLSBURY, J. Action in debt against the appellants as sureties upon the bond of one Philip Reitz, a defaulting town

treasurer, by the trustees of the township, with a recovery for $4,627.08.

The bond was in the usual form with the penalty of $60,-000, the name of the treasurer being inserted in the obligatory part of the bond as well as in the condition of it, but the bond was not signed by him. The defense of the sureties is, that the bond is not binding upon them as it is incomplete without the signature of the principal thereto, as he is recited as being the principal, and the trustees should not have accepted the bond in such condition without inquiring whether the sureties assented to being bound by it without he was also bound with them. They also set up that when they signed the bond it was upon the condition that it should not be delivered to the obligees until he had executed it with them.

The existence of such a condition imposed by the sureties upon Reitz, and his assent thereto at the time the bond was signed by them, is clearly established by the proofs, and was also found by the court below, as appears from the special findings of facts incorporated in the record.

At the time Reitz presented the bond for approval to the board of trustees it was read over by them, and one of them noticed that Reitz had not signed it but supposed it was not necessary he should do so, as his name appeared in the body of the bond.

It also appears from the evidence that Knapp, one of the trustees, was present when some of the sureties signed the bond, and then heard of the condition that Reitz was to sign it before it should be delivered.

There is no proof in the record that these appellants ever consented to the delivery of the bond or to being bound by its terms without the signature of Reitz, the principal.

This case has twice been before this court prior to the present appeal. The first time a judgment against Reitz and his sureties was reversed because the bond was not executed by Reitz, who pleaded *non est factum* verified, 3 Bradwell, 448, but no opinion was then expressed as to the liability of the sureties. Upon the case being remanded, the suit was dismissed as to Reitz and the declaration amended so as to de-

clare against the sureties alone, whereupon they demurred, and the court holding the bond void, the demurrer was sustained and judgment rendered for the defendant.

The declaration averring that the defendants, the sureties, delivered the bond as the official bond of Reitz, and was received by the trustees and approved by them as such, and the demurrer admitting this allegation, this court held, 10 Bradwell, 51, that " we must presume from the allegations of this declaration, and admitted by the demurrer to be true, that the defendants in this cause delivered said bond to the trustees, and such delivery was absolute and unconditional, intending to be bound without the signature of the principal thereto, and if they did so, in our opinion said bond is obligatory upon them. It was further said that " we are not permitted to assume, in the present state of this record, that the delivery of this bond to the obligees was accompanied by any conditions or stipulations that Reitz was also to sign it before it should be binding upon the defendants as his sureties. Whether any facts exist in this case which will exonerate the defendants or show their non-liability upon the bond for want of delivery thereof, must be made to appear at a subsequent stage of the proceedings, by proper pleadings and evidence in the case."

The judgment of the court below was therefore reversed and the cause remanded to the circuit court where a trial was had upon proper pleadings, denying the delivery of the bond and setting up the conditions above stated upon which Reitz was authorized to deliver the bond, resulting in a finding by the court, who tried the cause without a jury, in favor of the obligees and a judgment upon such finding from which the sureties appeal.

A further examination of the case has led us to believe that the rule announced by us in 10 Bradwell, 51, is the correct one, and should be applied even in cases of official bonds where the statute provides for the execution of such bond by the principal, and the evidence shows the sureties voluntarily assented to be bound by it without such execution by the officer.

The question however here presented is whether sureties who sign such bond and permit their principal to take it under the agreement and condition that he shall sign it before delivery, and who give no consent that it shall be delivered without his signature, are bound by it if it be delivered by the principal without signing, and accepted by the obligees in violation of such condition.

The effect of an agreement between a surety and his principal that before delivery of an obligation some other party shall become also an obligor therein, has frequently been before the courts for determination under varying circumstances peculiar to the particular case, and it must be admitted that the decisions even in analogous cases are not entirely harmonious.

It may perhaps be said that the more modern doctrine is, that any agreement between a surety and principal that other surety shall be obtained before the one signing shall be bound, will not avail as a defense if such bond be delivered in violation of such agreement to the obligee and there be nothing upon the face of the bond, nor in the attending circumstances, to apprise the obligee that such further signature was essential to complete the bond, as in such case the surety signing is estopped from denying that the principal had authority to deliver the bond as he had invested his principal with apparent authority to do so.   State v. Potter, 63 Mo. 212; State v. Peck, 53 Me. 284; Nash v. Fugate, 24 Gratt. 202; Deordorff v. Foreman, 24 Ind. 481; Daire v. United States, 16 Wall. 1; Smith v. Moberly, 10 B. Mon. 266.

All the cases, it is believed, quite agree that if the obligee when he accepts the bond had notice of such agreement or condition or of such facts and circumstances as would put a prudent man upon inquiry, the defense can be successfully interposed.

If he had actual notice it is clear he would not be an innocent holder, but in the absence of such notice, what facts and circumstances should be held as equivalent thereto has been a fruitful source of litigation and has led to a contrariety of decisions in the courts of the several States.

The most common form in which the question of construct-

ive notice has come before the courts appears to have risen upon the face of the obligation itself, as where more persons are named in the body of it as obligors than sign it, and the sureties signing it set up the defense that such named co-sureties were also to sign before delivery.  In such cases many courts have held that it was open to the defendant to show that the obligation was not to be delivered by the principal until the condition upon which he received it from the surety had been performed.   Such defect in the bond or other obliga-ˑ tion has been held sufficient to put the obligee upon inquiry whether those signing had consented to its being delivered without the signatures of the others named in it as co-sureties in the following cases:

Fletcher v. Austin, 11 Vt. 447; Pawling v. United States, 4 Cranch, 219; United States v. Leffler, 11 Pet. 860; Johnson v. Baker, 4 B. & A. 440; Mood v. Churn, 18 Gratt. 801.

And in others it is held that the bond was invalid upon its face as from such defect the law presumed that those signing did so upon condition that the other obligors were also to sign it, and as they did not do so the bond was not the obligation of those signing it:  Curtis v. Moss, 2 Rob. La. 367; Wells v. Dill, 1 Mart., N. S. (La.) 592; Hall v. Smith, 14 Bush. 604; State Bank v. Evans, 3 J. S. Green, 15 N. J. 155.

On the other hand equally respectable courts have held that the fact that one of a number of co-sureties named in the body of the obligation does not sign it, is not in itself sufficient notice to let in proof of such conditional delivery to the principal; that notwithstanding such defect, the obligee without any other notice has a right to rely upon the presumption that the surety, having entrusted the obligation to his principal, has by that act made him his agent to deliver it to the obligee in that condition, intending to be bound by it without its execution by the others: Williams v. Marshall, 42 Barb. 524; Town v. Kellett, 11 Geo. 286; Grimm v. School Directors, 51 Pa. St. 219; State v. Lewis, 73 N. C. 138; Smith v. Board of Supervisors, 59 Ill. 412.

In this last case it was held, upon demurrer to pleas alleging that the defendant signed the bond upon the condition

that it should also be signed by Cox as a co-surety (his name appearing in the body of the bond), and that Cox did not execute it, that the incompleteness of the bond in that particular was but evidence of notice and not conclusive in its character, and of itself was not sufficient to overcome the reasonable presumption that the actual authority of the principal was coextensive with the apparent authority conferred upon him by those signing, to act for them in the delivery of the instrument.

It is urged by appellee that this case has been overruled by the subsequent case of Chicago v. Gage, 95 Ill. 618, but an examination of that case we think will show that it is not to be treated as having that effect. What was there said upon this point was in commenting upon cases holding a different rule from Smith's case, and distinguishing such cases from that under consideration by the court, and instead of indicating any dissatisfaction with the former case it is expressly referred to by the court as an authority upon some of the questions arising in Gage's case.

The holding of the court that "the obligee was justified in assuming and acting upon the assumption that Gage really possessed the authority with which he was apparently clothed," was a direct affirmation of the doctrine in Smith's case. And there are good reasons for saying that in case of non-execution of a bond by some of the co-sureties named in it, the rule held by our court is the just one, and more conducive to the preservation of public interest than the one that casts all the burden and loss upon the obligee, by declaring all such obligations invalid.

In the absence of any law fixing the number or qualifications of sureties to a bond, the obligee has no duty to perform in that regard and is not interested in determining who or how many shall execute it as sureties. His duty and interest only extends to seeing that the bond is sufficient to accomplish the purpose intended. It is immaterial to him who the sureties are so they are able to respond to their obligation. Up to the time he accepts their bond the sureties are strangers to him, not having as yet entered into any privity

of contract with him. He owes them no duty to see that their agent is not committing a fraud upon them by violating some secret agreement between him and themselves. He is not called upon to suspect the agent in whom they have reposed confidence.

Owing no duty to a surety to see that a co-surety also signs, he has a right to presume that the actual authority of the agent is measured by his apparent authority.

But are the same presumptions to be indulged in where the principal is the one who has omitted to execute the bond? And especially in cases of official bonds, where the official should, in obedience to the law, become the principal obligor therein, and the obligee, by virtue of the same law, has the duty imposed upon him or them of seeing that the law is complied with in that regard? In such case has the obligee the right to assume that the surety intends to be bound by an obligation not signed by his principal? Has he the right to infer from the fact that the principal presents the bond for approval, that he is authorized to deliver it as the valid obligation of his sureties without the principal being also bound by it?

By our statute, Sec. 55, Ch. 122, Rev. St., the township treasurer, appointed by the board of trustees, is required to execute a bond with two or more freeholders who shall not be members of the board, as sureties, payable to the board of the township of which he is appointed treasurer, conditioned, etc., which bond shall be approved by the majority of the board at least, and shall then be delivered to the county superintendent, whose duty it is to carefully examine the same, and if found in all respects according to law, and the sureties good and sufficient, to approve the same; but if found in any respect defective he shall return it for correction. Sec. 15, Same Ch., R. S.

From these provisions of the statute it is clear that it is the duty of the principal to execute the bond, and the duty is imposed upon the board of trustees and the county superintendent of schools to see that he does so; for it must be admitted that without his signature thereto it is informal and defective.

The effect of non-execution of bonds by a principal, upon the rights of a surety thereto, has also passed in review before the courts, and as in case of co-sureties, there is some conflict of opinion as to the liability of those signing the obligation. Thus in Bean v. Parker and others, 17 Mass. 603, a bail bond was held incomplete and void without the signature of the principal; and in Russell v. Annable, 109 Mass. 72, the court went still further, and held that where the principal obligors constituted a firm and the bond was signed in the firm name, a surety thereon was not liable unless it be shown that the partner signing the firm name was authorized by his co-partner to thus sign and seal the obligation.

A bond purporting to be the obligation of an administratrix, but not signed by her, was adjudged void as to the sureties, in Wood v. Washburn, 2 Pick. 24. So in Terry v. Burchard, 21 Conn. 602, it is held, that the nature of an undertaking of a surety is such that there can be no obligation on his part unless there is an obligation on the part of the principal. In People v. Hartley, 21 Cal. 585, an official bond not signed by the principal was held a nullity as to the sureties.

In Bunn v. Jetmore, 70 Mo. 228, one Hazleton was elected constable. The statute of that State provided that before entering upon the duties of his office a constable should execute a bond with two or more sureties, etc., and it appearing that Hazleton had not signed the bond, although named in it as principal, it was held that the sureties, Jetmore and others, were not liable thereon, although the bond had been approved by the proper officials and Hazleton had acted under it. We might refer to other cases announcing the same rule, but it is not deemed necessary. Of course the courts which hold that the non-execution of a bond by contemplated co-sureties avoids the obligation as to other sureties signing, would for weightier reasons hold the same bond void when not executed by the principal.

When this case was before us on the former appeal, on the demurrer to the declaration, had we considered that the above cases correctly announced the rule as it should be held in this State, we should have affirmed the judgment of the court

below, as it appeared upon the face of the declaration, that Reitz, although named as principal obligor, had not executed the bond; but, as it then appeared to us, there was no law preventing a party from binding himself in a penal bond, conditioned that a principal should perform certain duties without his principal being likewise bound, if he saw proper to voluntarily enter into such obligation and assume such responsibilities. That the obligation was not *per se* void, but whether the sureties were liable thereon, depended upon the proof of the fact alleged in the declaration, that they delivered it intending to be bound without the signature of Reitz thereto.

We therefore remanded the cause, that the plaintiff should have an opportunity of proving the averments of their declaration in that regard, and which they have not done, but on the contrary it is clearly established that it was not only expected but agreed, that before delivery the bond was to be signed by Reitz. We still think that the burden of proof was upon the plaintiffs to affirmatively establish by the evidence that the sureties delivered this bond intending to be bound in the absence of its being executed by Reitz.

The statute requires him to execute it as principal; it is recited in the body of the bond that he is such and bounden by it; by the statute the plaintiffs as well as the county superintendent of schools are charged with the duty of seeing that it conforms to the law, and in such case, the sureties signing have the right to presume that they will discharge their duty and not accept a bond, without their express consent, in which he is not also bound with them. Fletcher v. Light, 4 Bush, 303.

When the obligee neglects a plain duty imposed by the statute he ought not to be permitted to say in absence of proof supporting the assertion, that the surety has voluntarily waived the performance of such duty upon his part.

An official bond not signed by a principal, who is required by statute to execute it, ought to raise upon its face the implication that the sureties signing it did so upon the assumption that the principal should also execute it and that the obligee would not violate his statutory duty by accepting it without

its execution by him. Neither can it be said in such case that the possession of the obligation by the principal is an implied authority to deliver it in such condition; by intrusting the bond to him, signed by them, it can scarcely be said that they impliedly authorized him and the obligee to violate the law. The presumption arising can go no further than this, that when they have fulfilled their legal duty the bond shall be valid.

As we have said in case of co-sureties not executing the bond, the obligee is not bound to presume the agent of the sureties will violate his duty to them, so here the sureties are not bound to presume the obligee will violate his duty to the public and to them. We still believe the conclusion reached by us upon the former appeal, that the bond would be binding if it was shown that the sureties delivered it, intending to be bound by it, is the correct one, and founded upon better reasons than those cases holding the obligation void, thereby in effect precluding persons from making their own contracts when they are neither immoral nor illegal, and we are not without authority supporting our conclusion.

Sharp v. United States, 4 Watts (Pa.), 21, was a suit upon a bond given under an act of Congress, requiring two sureties, and the bond was prepared for two who were named in it, but was signed by the principal and one surety, Sharp, only, and in that condition was delivered by the principal to the obligee who accepted it. Sharp defended upon the ground that the act of Congress recited in the bond had not been complied with in having the other surety named in it also execute it, and it was held by the court, that though the act required two sureties, this provision could be waived by the parties, but when Sharp signed the bond with these names and a reference to the act in it, he had the right to believe that it should be taken in strict conformity with the act of Congress and that the other surety should also execute it; that his signature was conditional, and unless it could be shown that the condition—the execution of the bond by the co-surety—had been dispensed with by him, he had a good defense to the action. It was further said that "unless the

plaintiff can show that Sharp was informed that W. L. (the co-surety) had not signed the bond, and agreed that he alone would be liable, the plaintiff can not recover."

The case of Grim v. School Directors, 51 Pa. St. 219, does not, as is suggested, conflict with the above case. In the latter case the court noted a marked distinction between them; that in Sharp's case the statute required two sureties, but in Grim's case there was no law fixing the number of sureties, nor who they should be, and the bond was therefore held *prima facie* valid.

In Hall v. Parker, 39 Mich. 287, the suit was upon a cost bond reciting that L. H. was principal obligor, but was not signed by him, and the surety defended upon that ground and the court held, " that there was no presumption that sureties had agreed to waive the signature of a principal whose name appeared as an obligor with theirs in the bond, and that, if such bond could be established as a liability against them without his signature, it could only be by positive proof that they had delivered it to become operative as against themselves alone." And in the same case when it was before the court on a former appeal (37 Mich. 500), the court said that the obligee must be taken to have been fully cognizant of the form it bore and to have had notice of the fair and reasonable import of such form.

Johnson v. Kimball Township, 39 Mich. 187, is a case very like the one at bar. There the suit was upon the official bond of a township treasurer which he never signed, and the sureties defended. The statute of Michigan, as stated by the court, plainly contemplates that such officer shall be a party to his own bond. The court held that in such case the law presumes that the party signing it did so upon the condition that the principal should also sign, and where he purports to be obligor and does not sign the bond, there must be positive evidence that the sureties intended to be bound without requiring his signature before they can be held responsible. The court also says: " Here the bond shows on its face that the principal has not signed a paper in which he was positively set forth as the person whose signature is to be that of

Schiek v. Trustees of Schools of Township.

the primary debtor, whose fellow obligors only promise that he shall do his duty.

The State of Ohio v. Bowman et al., 10 Ohio, 445, is re-referred to as announcing a contrary doctrine from that in the last cited cases. That was a suit upon a county treasurer's bond not executed by him, and it was argued that the bond was void. This position was not sustained by the court, great stress being placed upon the fact that by their statute the treasurer was only required to "give" bond with sureties, which the court says, may well be construed "by sureties," and that the completeness of the bond *stricti juris* depended simply upon the question whether it was "given" by him, of which last fact the court had no doubt from the evidence. The court further held that the bond being found in the hands of the legal depositary the presumption, in the absence of proof to contradict it, was very strong that the sureties had dispensed with the execution by the principal. To the extent that it casts upon the sureties the burden of proof to show that they did not dispense with the signature of the principal obligor, it may be said to be in conflict, but upon the question of the validity of the bond it supports those cases as well as our holding in 10 Bradwell, *supra*. Again in that case no defense of a conditional delivery to the principal was made, and it can hardly be claimed that the court in that case denied the validity of such defense or that the defects in the bond would not be notice thereof if it existed.

From the best consideration that we have been able to give this case, in the light of all the authorities bearing upon the questions raised, we are disposed to hold as the law of the case that the obligees owed to these sureties a duty under the statute of having their own appointee sign the bond in suit, and that the sureties had a right to have that duty performed and the fair and reasonable expectation that the obligees would not neglect it. And as it appears from the face of the bond that the obligees, as well as the principal obligor, have failed to perform a plain statutory duty, they should take the burden of showing that these sureties expressly assented to being bound alone by such obligation, or which is tantamount there-

to, that they consented to its delivery without its being executed by Reitz.

That there existed no *implied* authority in Reitz to deliver it, nor in the trustees to accept it as an obligation binding upon the sureties without his signature, and therefore it is open to them to show as a defense, if they desire to interpose it, that he had no actual authority to deliver it except upon complying with the condition upon which it was intrusted to him, viz., that he was also to execute it before delivery. Having the right to rely upon the proper discharge of their legal duty by the obligees to see that a proper bond was executed they were not in fault in dismissing all oversight over it, as they might well suppose their principal had signed it before it was approved by the trustees and the county superintendent of schools.

As we find the fact fully established by the evidence that these appellants signed the bond and intrusted it to Reitz upon the condition and restriction that it should not be delivered until he also executed it, and the obligees having accepted the delivery of the bond without such condition being complied with after full examination of the bond, from which they must be held to have notice that it was not executed by him, we must hold that the defense is made out and no recovery can be had against the appellants.

This conclusion disposes of all the questions made upon the propositions submitted to and held or refused by the court below.

The judgment of the court below will be reversed.

Judgment reversed.