BIRNEY N. PICKARD v. JOHN A. BRYANT.

*Stenographer's minutes—Evidence—Cross-examination—Fraudulent conveyances—Charge to jury.*

1. The testimony of a witness taken on a former trial may be read to him to refresh his memory; and it is error to exclude such

reading for that purpose, on the ground that the attorney requesting it at first stated that his object was to impeach the witness.

2. Where, in a suit involving the alleged fraudulent sale of property, one of the vendors is sworn as a witness on behalf of the vendee and plaintiff, it is competent for the defendant on cross-examination to draw out any material fact tending to show that the sale was fraudulent as to creditors.

3. Where in such a case the defendant is obliged, under the ruling of the court excluding such cross-examination, to call the vendor as his own witness, he may contradict his testimony by other witnesses; citing *Snell v. Gregory*, 37 Mich. 500.

4. The declaration of one of the vendors to a sale alleged to be in fraud of creditors, made in a kitchen attached to the store in which the goods were kept, and immediately after the attachment of the property by creditors, that she claimed to be in possession of the goods, cannot be used in a suit by the vendee against the attaching officer, the vendee not being bound by such declaration.

5. The right to assign errors on the charge of the court without exceptions, under Act No. 101, Laws of 1885 (3 How. Stat. § 7621b), does not apply to an abstract statement of the law in relation to fraud, the correctness of which, as a general proposition, the appellant does not impeach, and of which he asked no modification to fit the case in hand, or to the failure of the court to go into detail as to the facts and circumstances tending to show the alleged fraud, the attention of the court not being challenged by proper requests to such facts and circumstances.[1]

Error to Leelanaw. (Ramsdell, J.) Argued June 16, 1892. Decided July 1, 1892.

Trespass. Defendant brings error. Reversed. The facts are stated in the opinion.

*James R. Adsit*, for appellant.

*Turner & Carroll*, of counsel for appellant, contended:

1. In support of the right to cross-examine the witness Nelson, and to contradict his testimony when forced by the ruling of the

[1] See *Peterson v. Toner*, 80 Mich. 350.

court to call him as a witness, counsel cited *Snell v. Gregory,* 37 Mich. 500; *Ross v. Miner,* 67 Id. 412.

2. Proof of actual participation by the plaintiff in the fraudulent intent of the Nelsons was not necessary to defeat the transfer; citing *Hough v. Dickinson,* 58 Mich. 89, and cases cited.

3. Fraud need not be established by any different class of testimony than is required to establish any other fact which it is the duty of the party alleging it to establish; citing *O'Donnell v. Segar,* 25 Mich. 367; *Hough v. Dickinson,* 58 Id. 95; *Burrill v. Kimbell,* 65 Id. 217; *Ross v. Miner,* 67 Id. 410.

*Pratt & Davis,* for plaintiff, contended:

1. In support of the claim that the unverified minutes of the stenographer were not admissible to impeach the witness or refresh his recollection, counsel cited *Misner v. Darling,* 44 Mich. 438; *Edwards v. Heuer,* 46 Id. 95; *People v. Becker,* 48 Id. 44; *People v. McKinney,* 49 Id. 334; *Toohey v. Plummer,* 69 Id. 350.

2. The entire charge is to be considered together; citing *Watson v. Watson,* 58 Mich. 507; *Daniels v. Clegg,* 28 Id. 32; 1 Jac. & Chan. Dig. 1096, § 281; and particular phrases or sentences should not be considered as independent of, but with, the context; citing *Welch v. Ware,* 32 Mich. 77; *Burdick v. Michael,* Id. 246; *Frankel v. Coots,* 41 Id. 75.

3. The rule as to the amount and character of evidence required to establish fraud is well and clearly defined in the following cases: *Andrews v. Fillmore,* 46 Mich. 315; *Iron Co. v. Waters,* 50 Id. 13; *Fraser v. Passage,* 63 Id. 551; *Wait v. Kellogg,* Id. 145; *Blish v. Collins,* 68 Id. 546; and for the rule contended for in this case, see *Kipp v. Lamoreaux,* 81 Mich. 299.

MORSE, C. J. This is an action of trespass, brought by the plaintiff against the defendant, under-sheriff of Leelanaw county, to recover the value of certain personal property taken by said under-sheriff, and also for damage done to plaintiff's business by such taking. Plaintiff recovered judgment in the circuit court for the value of the goods taken.

The goods in question were seized upon a writ of attachment in favor of Storm & Hill against Nelson & Co., and it was claimed that the property was that of Nelson & Co., as Pickard was not a good-faith purchaser

as against the creditors of Nelson & Co. The main question in the case was the good faith of Pickard's purchase from Nelson & Co. While the plaintiff was on the stand as a witness in his own behalf, and on cross-examination, inquiry was made of him as to his knowledge of the financial condition of Nelson & Co. before he purchased the goods in question. He admitted having heard "street rumors" or "gossip" that they were "hard up" shortly before he bought their stock in trade. He was then asked the following questions:

"*Q.* Previous to those street rumors, did you ever hear from any source whatever that Nelson & Co. were hard up financially?

"*A.* I can't tell you. I don't remember.

"*Q.* Didn't you swear on the last trial that you had?

"*A.* I cannot tell you. I don't remember."

Mr. Adsit here requested the stenographer to read the witness' testimony on that point as given on the last trial of this case.

"*Mr. Pratt:* I object to it if the object is to impeach the witness.

"*The Court:* What is your object, Mr. Adsit?

"*Mr. Adsit:* The object is to impeach this witness.

"*The Court:* Then you cannot show it. He simply says he cannot remember it. If your object was to refresh his memory, you might be entitled to it.

"*Mr. Adsit:* Then I will have it read to him for the purpose of refreshing his memory.

"*The Court:* No, sir; you have made your election, and you cannot now change it.

"*Mr. Adsit:* Note an exception."

This was error. The action of the circuit judge is attempted to be excused by plaintiff's counsel on the ground that there had been no verification of the stenographer's minutes. The answer to this excuse is that this was not the ground of the objection made, or the reason given for the ruling of the court. If this objection had

been made, it could have been easily obviated by such verification. It was competent to read it to him to refresh his memory, as the circuit judge at first correctly ruled; but afterwards he refused to allow this on the untenable ground that counsel was bound by the object first stated. See *Toohey v. Plummer*, 69 Mich. 346–350.

The plaintiff introduced as a witness Charles A. Nelson, one of the firm of Nelson & Co., to prove that the sale to plaintiff covered all the stock in trade and merchandise that Nelson & Co. owned at that time, and that plaintiff took possession and control of the property after the sale, and remained in such possession and control for a week or 10 days. On cross-examination, counsel for defendant undertook to show by the witness various dealings between the firm and members of the firm and the relatives of the firm to establish a fraudulent disposition of property. This the court refused, upon the ground that it was not proper cross-examination, and that counsel must wait for this proof until he had the case in defense. Nelson was afterwards called by defendant to show these transactions. In his charge to the jury the court said:

"Mr. Charles Nelson testified in reference to this matter as a witness for the defendant, and they are bound by his testimony to this extent: Where a party places a witness upon the stand, and such witness answers fully and fairly to such questions as are put to him without evasion, without reservation, and the answers themselves are credible and reasonable, then the party is bound by them, and the party placing such witness on the stand cannot contradict him."

The court was in error in not permitting the cross-examination, and also in error as to the instruction that his testimony could not be contradicted. If the theory of the defense was true, Charles A. Nelson was one of

the parties to the fraud, and, when placed upon the stand as a witness by the plaintiff to sustain his case, it was open to the defendant on cross-examination to draw out any material fact tending to show that the sale was a fraudulent one as against creditors; and, if the defendant was obliged by the ruling of the court to call an adverse witness, he was at liberty to contradict his testimony by other witnesses. *Snell v. Gregory,* 37 Mich. 500.

It is contended by plaintiff's counsel that the error in the charge of the court was harmless, because no attempt was made to impeach or contradict the witness, and that the jury were instructed, in substance, that they must find Nelson's statements to be true in order to bind defendant with such statements. But we are satisfied that the error was prejudicial. Taken in connection with the fact that the fraud in this case was to be gleaned, if any existed, from the conduct of Nelson & Co. and the plaintiff, and that the circumstances of such fraud could not be completely known without the examination of the parties concerned in it, and with the further fact that this examination was denied defendant in Nelson's case, unless he made him his own witness, the charge of the circuit judge could not fail of being extremely hurtful to the defense.

Mrs. Adaline A. Nelson was a member of the firm of Nelson & Co. It was claimed upon the trial that the plaintiff never had anything but a colorable possession of the store and goods; that the Nelsons, after the sale, and up to the time of defendant's levy, had actual possession and control of the same. Mrs. Nelson lived over the store, and had to come down-stairs and pass through a store-room in the back end of the store building to reach her dining-room and kitchen, which was a part of the store building, or attached to it. The defendant testified

that he went to the store in the evening with the writ of attachment; had some talk with Pickard, who was in the store; told him that he came to serve the writ; but did not levy that evening. He attached the goods a day or two afterwards. After he had taken possession of the goods he went out. When he came back he found the door locked. He went round to the kitchen, and saw Mrs. Adaline Nelson, and told her he wanted to go in the store. After he left her, and went back, he found the door unlocked, but does not know who unlocked it. He was asked if any one that morning claimed to have the custody or possession of the goods. He started to answer, "Mrs. Nelson said that"—when he was interrupted by an objection by plaintiff's counsel. Defendant's counsel then stated that he desired to show that Mrs. Nelson claimed to be in possession of the goods the morning the attachment was levied.

"*The Court:* Then you will have to bring her here. She is not a party to this suit. If she was, you could do it in this way."

There was no error in this ruling. When the officer levied, and when he was there in the evening, Mrs. Nelson was not in the store, and had no custody of the goods; and when this conversation took place she was in the kitchen, and not with the goods. Her declarations could not be used to bind the plaintiff after the levy was made, and while she was at her kitchen, although such kitchen may have been a part of the store building.

It is claimed that the circuit judge, in his charge to the jury, instructed them that they must find that Pickard was conniving with the Nelsons to defraud their creditors, when it was only necessary for them to find that the plaintiff, when he purchased the goods, had knowledge of such facts as would have put a prudent

man on inquiry. There is some language used by the court which might have led the jury to believe that Pickard's participation in the fraud must be shown, but the circuit judge, in another part of his instructions, correctly stated the law; and as the jury found specially, in answer to a question, that plaintiff did not have knowledge of such facts and circumstances as would charge him with the duty of inquiry into any fraud upon the part of Nelson & Co., we are satisfied that no harm was done defendant by the use of the language complained of.

The purchase price of the goods was $2,500. Pickard paid $300 down, and gave his notes for the balance,— one for $500, due July 1, 1888; $500, due January 1, 1889; $700, due July 1, 1889; and $500, due January 1, 1890; all bearing interest at 6 per cent. The court instructed the jury that fraud could not be inferred because the sale was made on credit, and further said:

"The giving of negotiable promissory notes on the purchase of property may well be treated as payments. The notes given by the plaintiff to Nelson & Co. on the purchase of the goods in controversy, being negotiable, can be enforced in the hands of innocent holders."

The counsel for defendant admits this to be good law in the abstract, but claims that in this case there was testimony tending to show, if not conclusive evidence, that Pickard had no property, and that the notes could not be collected of him because of his financial irresponsibility; that the circuit judge should have followed these instructions with a statement of the law applicable to such a state of things, and informed the jury that "a sale to a person without means when ready money was the nominal purpose must necessarily be suspicious;" and that the court erred in this connection in not pointing

out to the jury the evidences of fraud in the case proper
to be considered by the jury.

If the charge of the court was correct in the abstract,
or if the court failed properly to point out what might
be considered as badges of fraud in the transaction, it
was the duty of counsel for defendant to ask a modifi-
cation of the abstract propositions as applied to the case
in hand, and also to bring to the notice of the court,
by proper request or requests, the elements of fraud in
the testimony which he claimed, so that the circuit judge
might instruct the jury as to the weight and consider-
ation they might give them in arriving at the question
whether a fraud was intended by the transfer of the
property to plaintiff. Failing to do this, he cannot
allege error because the court did not go into detail as
to the facts and circumstances tending to show fraud,
or complain of an abstract statement of the law in
relation to fraud, the correctness of which, as a general
proposition, he does not impeach, and of which he asks
no modification to fit the case in hand. The right to
assign errors upon the charge after trial does not include
matters of this kind.

The judgment is reversed, and new trial ordered, with
costs of this Court to defendant.

McGRATH, LONG, and GRANT, JJ., concurred.